UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

------------------------------------------------------------ x
DASHANTE SCOTT JONES,                              :
                                                   :
               Plaintiff(s),     :
                                                   :   **INITIAL REVIEW**
   -against-                                      :   **ORDER**
                                                   :
BLEKIS, MARCELLIN, CRAIG WASHINGTON,:   23-CV-1641 (VDO)
and MALDONADO,                                     :
                                                   :
               Defendants.       x
------------------------------------------------------------

**VERNON D. OLIVER**, United States District Judge:

    Plaintiff Dashante Scott Jones is a sentenced inmate incarcerated at Corrigan Correctional Center in Uncasville, Connecticut. He brings this action *pro se* and *in forma pauperis* under 42 U.S.C. § 1983 naming four defendants, Officer Blekis, Lieutenant Marcellin, former Warden Craig Washington, and Warden Maldonado.

    The plaintiff alleges that excessive force was used against him resulting in exposure to unsafe conditions of confinement. He seeks damages from the defendants in their individual and official capacities. The plaintiff also seeks injunctive relief from Warden Maldonado in the form of an order that no non-supervisory officer or staff member may carry or use a chemical agent.

**I.    BACKGROUND**

    While the Court does not set forth all of the facts alleged in the plaintiff's Complaint (Doc. No. 1), it summarizes his basic factual allegations here to give context to its ruling below.

    The incident underlying this action occurred on October 23, 2023 while the plaintiff, who suffers from asthma, was confined at Garner Correctional Institution. Doc. No. 1 at 4. The

plaintiff's toilet was clogged and flooded the floor when it was flushed. *Id.* In addition, the vent in his cell was not working properly causing him to have difficulty breathing. *Id.* The plaintiff states that he covered his cell window because the second shift officer would not move him to a different cell and this action should have resulted in calling a supervisor to the unit. *Id.* Instead, the second shift officer did nothing and left the matter for the officers on third shift. *Id.*

When the shift changed about an hour later, Officer Blekis immediately noticed the flooded floor and covered window. *Id.* He ordered the plaintiff to remove the covering from the window, but the plaintiff refused to do so. *Id.* Instead of calling a supervisor, as he should have done under departmental procedures, Officer Blekis called the plaintiff a racially derogatory name and sprayed him with a chemical agent through the trap in the cell door. *Id.*

Officer Blekis again ordered the plaintiff to uncover the window. *Id.* at 5. The plaintiff alleges that he was unable to see and requested medical assistance, including his asthma inhaler, but did not uncover the window. *Id.* When the plaintiff again refused to uncover the window, Officer Blekis deployed the chemical agent a second time. *Id.* Officer Stevens told Officer Blekis that a chemical agent should not be used on the plaintiff and persuaded the plaintiff to uncover the window. *Id.*

The plaintiff reported the incident to Lieutenant Marcellin who told the plaintiff that he had given Officer Blekis permission to carry and use the chemical agent. *Id.* Officer Blekis issued the plaintiff a disciplinary report for attempted assault on staff, which Lieutenant Marcellin signed. *Id.* at 8, 12. Officer Belkis stated that the plaintiff had attempted to throw toilet water through cracks in the cell door and into the trap in the door when he tried to look into the cell through the trap. *Id.*

The plaintiff contends that the charge was false for three reasons, first, he was in an empty

segregation cell and did not have a cup to use to throw water; second, the cell window was blocked so, even if he had thrown water, Officer Belkis could not have known whether the water was from the toilet or the sink; and, third, video surveillance footage would not show Officer Blekis attempting to avoid being hit with water. *Id.* at 8. The plaintiff also contends that Officer Blekis did not follow department procedures before a planned use of force. *Id.* at 9.

After the plaintiff was found guilty at the disciplinary hearing, former Warden Washington denied his disciplinary appeal. *Id*. at 9, 14, 15.

## II.  LEGAL STANDARD

The Court must review prisoner civil complaints and dismiss any portion of the complaint that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A. This requirement applies to all prisoner filings both those where the prisoner pays the filing fee and those where he proceeds *in forma pauperis*. *Nicholson v. Lenczewski*, 356 F. Supp. 2d 157, 159 (D. Conn. 2005) (citing *Carr v. Dvorin*, 171 F.3d 115 (2d Cir. 1999) (per curiam)). Here, the plaintiff is proceeding *in forma pauperis.*

Although highly detailed allegations are not required, the complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. This plausibility standard is not a "probability requirement," but imposes a standard higher than "a sheer possibility that a defendant has acted unlawfully." *Id.*

In undertaking this analysis, the Court must "draw all reasonable inferences in [the plaintiff's] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted). The Court, however, is not "bound to accept conclusory allegations or legal conclusions masquerading as factual conclusions," *id.*, and "a formulaic recitation of the elements of a cause of action will not do," *Iqbal*, 556 U.S. at 678. Consequently, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555).

It is well-established that submissions of *pro se* litigants are "reviewed with special solicitude, and 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Matheson v. Deutsche Bank Nat'l Tr. Co.*, 706 F. App'x 24, 26 (2d Cir. 2017) (summary order) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474–75 (2d Cir. 2006)); *see also Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed *pro se* is 'to be liberally construed,' and 'a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" (internal citations omitted)). This liberal approach, however, does not exempt *pro se* litigants from the minimum pleading requirements described above; a *pro se* complaint still must "state a claim to relief that is plausible on its face." *Mancuso v. Hynes*, 379 F. App'x 60, 61 (2d Cir. 2010) (summary order) (quoting *Iqbal*, 556 U.S. at 678). Therefore, even where a plaintiff is proceeding *pro se*, the Court may not "invent factual allegations" that the plaintiff has not pleaded. *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010).

### III.   DISCUSSION

The plaintiff asserts federal law claims for use of excessive force in violation of the Eighth Amendment, unsafe conditions of confinement and denial of equal protection in violation of the Fourteenth Amendment, and supervisory liability. He also asserts violations of many state law provisions.

####   A.   Eighth Amendment Claims

#####   1.   Use of Excessive Force

The plaintiff alleges that Officer Blekis sprayed him with a chemical agent when his asthma precludes that action. He also alleges that Officer Blekis did not follow department procedures and contact the medical unit or call a supervisor before using force against him.

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII, which includes the "unnecessary and wanton infliction of pain," *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). To state a claim for the use of excessive force in violation of the Eighth Amendment, the plaintiff must allege facts establishing both objective and subjective components. *See Sims v. Artuz*, 230 F.3d 14, 20-21 (2d Cir. 2000).

The objective component "focuses on the harm done" to the prisoner in light of "contemporary standards of decency," and the amount of harm "depends on the nature of the claim." *Id*. at 21 (citing *Hudson v. McMillian*, 503 U.S. 1, 8 (1992)). Although some degree of injury is usually required, the prisoner need not show that he suffered a "significant injury" to state a claim for use of excessive force. *See Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010). "[T]he use of excessive physical force against a prisoner may constitute cruel and unusual punishment [even] when the inmate does not suffer serious injury." *Id.* at 34 (quoting *Hudson*, 503 U.S. at

5

4). However, "not 'every malevolent touch by a prison guard gives rise to a federal cause of action.'" *Id.* at 37 (quoting *Hudson*, 503 U.S. at 9).

The subjective component of the "excessive force" standard requires a showing that the use of force was "carried out 'maliciously and sadistically' rather than as part of 'a good faith effort to maintain or restore discipline.'" *Id*. at 40 (quoting *Hudson*, 503 U.S. at 9). The courts must consider whether "the officials act[ed] with a sufficiently culpable state of mind." *Hudson*, 503 U.S. at 8 (citation omitted). The extent of the inmate's injuries is one factor the court may use to determine whether correctional staff could "plausibly" have considered the force necessary in a particular situation. *Id.* at 7. Other factors include "the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." *Id.* (citation and internal quotation marks omitted).

Here, the plaintiff alleges that Officer Blekis deployed the chemical agent without following department procedures. Although the plaintiff concedes that Officer Blekis asked him to uncover the cell window, and he refused to do so, before using force, it is not clear whether this amount of force was needed. Under these circumstances—alleged purposeful deployment of a chemical agent against an inmate with asthma without following department procedures—for purposes of initial review, the plaintiff has sufficiently alleged a plausible claim for use of excessive force against Officer Blekis. Further development of the record is required to properly evaluate this claim.

    2.    **Unsafe Conditions**

The plaintiff contends that being subjected to the chemical agent exposed him to unsafe conditions of confinement because the chemical agent exacerbated his asthma and caused him

to experience throat and chest pain. He alleges that the chemical agent remained on his skin and in his scalp causing the pain to persist for several days. As the conditions the plaintiff describes are merely the effects of the chemical agent, the Court considers this claim to be a restatement of the claim for use of excessive force.

### 3. False Accusation

Finally, the plaintiff alleges that Officer Blekis issued him a false disciplinary report. A false disciplinary report is actionable only if the inmate is denied due process at the associated disciplinary hearing. *See Mitchell v. Senkowski* 158 F. App'x 346, 349 (2d Cir. 2005). The plaintiff alleges that that he attended the disciplinary hearing and was found guilty. He contends that the charges were false but does not allege that he was denied due process at the hearing. Thus, he cannot plausibly assert a claim for false accusation.

### B. Supervisory Liability

The plaintiff must allege facts showing that any defendant against whom he seeks damages was personally involved in the alleged constitutional violation. *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) ("personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983") (internal citation and quotation marks omitted). This is true with respect to supervisory officials, as well. *Tangreti v. Bachman*, 983 F.3d 609, 620 (2d Cir. 2020) (a plaintiff must "plead and prove the elements of the underlying constitutional violation directly against the official without relying on a special test for supervisory liability"). The plaintiff alleges that Lieutenant Marcellin and former Warden Washington are supervisory officials.

      **1.**      **Former Warden Washington**

The only allegation against former Warden Washington is that he denied the plaintiff's disciplinary appeal. Thus, the plaintiff has alleged only that he was aware of the plaintiff's claims after the fact. Mere awareness, however, is not sufficient to state a claim for supervisory liability. "A supervisor's 'mere knowledge ...' is not sufficient because that knowledge does not amount[] to the supervisor's violating the Constitution." *Tangreti*, 983 F.3d at 616-17 (quoting *Iqbal*, 556 U.S. at 677). The fact that the plaintiff disagrees with the appeal decision, does not constitute a constitutional violation. *See Rooks v. Santiago*, No. 3:20-CV-299(MPS), 2021 WL 2206600, at *3 (D. Conn. June 1, 2021) (noting that, even before *Tangreti*, "the Second Circuit noted that it is 'questionable whether an adjudicator's rejection of an administrative grievance would make him liable for the conduct complained of' ... and district courts held that 'the review, denial or affirmance of a denial of a grievance is insufficient to establish personal involvement' of a supervisor in the denial of a constitutional right." (citations omitted)); *Smart v. Annucci*, No. 19-CV-7908(CS), 2021 WL 260105, at *5 (S.D.N.Y. Jan. 26, 2021) (failing to correct another officer's violation insufficient to establish supervisory liability; "even before *Tangreti*, affirming the outcome of a prison hearing was not sufficient to establish personal involvement" (citation omitted)). As the plaintiff alleges only that former Warden Washington denied his disciplinary appeal, the claim against former Warden Washington is dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

      **2.**      **Lieutenant Marcellin**

The plaintiff alleges that he complained to Lieutenant Marcellin that Officer Blekis, a non-supervisory officer, had used a chemical agent against him, and that Lieutenant Marcellin

8

signed off on the disciplinary report. As both events occurred after the incident, they are insufficient to show Lieutenant Marcellin's personal involvement in the use of force.

Further, to the extent that the plaintiff's allegation that signing the allegedly false disciplinary charge constitutes a false accusation, that claim is not plausible for the reasons stated above. The claims against Lieutenant Marcellin are dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

### C. Fourteenth Amendment Claims

The plaintiff also states that he brings Fourteenth Amendment claims for unsafe conditions of confinement and denial of equal protection of the laws.

#### 1. Unsafe Conditions

The plaintiff brings his claim for unsafe conditions of confinement under, presumably, the Due Process Clause of the Fourteenth Amendment. "[W]here another provision of the Constitution provides an explicit textual source of constitutional protection, a court must assess a plaintiff's claim under that explicit provision and not the more generalized notion of substantive due process." *Kai P. v. McIntyre*, 235 F.3d 749, 757-58 (2d Cir. 2000) (quoting *Conn v. Gabbert*, 526 U.S. 286, 293 (1999) (internal quotation marks omitted)). Thus, the Court concluded above that the plaintiff's claims are cognizable under the Eighth Amendment as part of his excessive force claim, any Fourteenth Amendment due process claims for unsafe conditions of confinement are dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

#### 2. Equal Protection Clause

The plaintiff also asserts a violation of the Equal Protection Clause. "[T]he Equal Protection Clause bars the government from selective adverse treatment of individuals compared with other similarly situated individuals if 'such selective treatment was based on impermissible

9

considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious bad faith intent to injury a person.'" *Bizzaro v. Miranda*, 394 F.3d 82, 86 (2d Cir. 2005) (quoting *LeClair v. Saunders*, 627 F.2d 606, 609-10 (2d Cir. 1980) (emphasis omitted)). Equal protection does not mandate identical treatment for each individual, but rather requires that similarly situated persons be treated the same. *See Muhmmaud v. Murphy*, 632 F. Supp. 2d 171, 178 (D. Conn. 2009). Thus, to state a traditional equal protection claim, the plaintiff must allege facts showing that he was treated differently from other similarly situated inmates and that the different treatment was based on one of these reasons. *See Nicholson v. Hannah*, No. 3:20-cv-209(JAM), 2020 WL 3086022, at *5 (D. Conn. June 10, 2020) (citations omitted).

The plaintiff does not identify any other inmate experiencing the same conditions who was treated differently. Instead, he alleges that he has not seen a non-supervisory officer in any other correctional facility who carries a chemical agent and is not aware of any other inmate who was sprayed with a chemical agent in response to covering his window. The fact that the plaintiff has not seen a non-supervisory officer carry a chemical agent does not show that this has never occurred. In addition, a chemical agent has been used against other inmates who refused to uncover the window in their cell doors. *See, e.g., Gully v. Lizon*, No. 3:19-cv-310(SRU), 2019 WL 1559432, at *3 (D. Conn. Apr. 10, 2019) (noting that inmate had refused to uncover window even after chemical agent deployed). Thus, there is no factual basis for an equal protection claim. Any equal protection claims are dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

**D.     Conspiracy**

The plaintiff makes several references to conspiracy. All defendants in this action are, or were, correctional employees and the plaintiff alleges that they were acting in their capacities as correctional officers or officials. The intracorporate conspiracy doctrine provides that officers, employees, and agents of a single corporate entity are legally incapable of conspiring together. *See Hartline v. Gallo*, 546 F.3d 95, 99 n.3 (2d Cir. 2008). Although the Second Circuit has not yet applied the doctrine in section 1983 cases, district courts within the Second Circuit have done so. *See Domroes v. White*, No. 1:23-cv-41, 2023 WL 7712011, at *14 (W.D.N.Y. Nov. 15, 2023) ("This court has joined the majority to find that 'the rationale behind the intracorporate conspiracy rule ... applies with equal force in the [§] 1983 context.'") (internal citation omitted) (citing cases); *Baltas v. Dones*, No. 3:22-CV-38(MPS), 2022 WL 1239989, at *7 (D. Conn. Apr. 27, 2022) (dismissing conspiracy claims under intracorporate conspiracy doctrine).

There is an exception to the intracorporate conspiracy doctrine when individuals are "pursuing personal interests wholly separate and apart from the entity." *Ali v. Connick*, 136 F. Supp. 3d 270, 282-83 (E.D.N.Y. 2015) (citation and internal quotation marks omitted). Simple allegations that the defendants were motivated by personal bias, however, are insufficient to support the exception. *See Vega v. Artus*, 610 F. Supp. 2d 185, 205 (N.D.N.Y. 2009) (holding that "in order to allege facts plausibly suggesting that individuals were pursuing personal interest wholly separate and apart from the entity" to overcome the intracorporate conspiracy doctrine" more is required of a plaintiff than simply alleging that the defendants were motivated by personal bias against plaintiff"). Conduct meeting the exception must show officers working against, not for departmental interests. *See, e.g., Mazyck v. Keller*, 531 F. Supp. 3d 630, 647

(W.D.N.Y. 2021) (finding sufficient allegations to invoke exception where plaintiff alleged that defendants fabricated evidence to cover up actions of a third defendant and those actions were not related to corporate policy or management decisions); *Brown v. Annucci*, No. 19 CV 9048(VB), 2021 WL 860189, at *10-11 (S.D.N.Y. Mar, 8, 2021) (defendants "us[ed] excessive force and then agree[d] to cover up the alleged assault by manipulating or destroying evidence").

As the plaintiff alleges no facts suggesting that the defendants were acting against departmental interests, the intracorporate conspiracy doctrine bars any conspiracy claims.

### E.     Official Capacity Damages Claims

The plaintiff seeks damages from all defendants in their official and individual capacities. The Eleventh Amendment prohibits an award of damages against state officials in their official capacities unless the state has waived that immunity or Congress has abrogated it. *Kentucky v. Graham*, 473 U.S. 159, 169 (1995). Section 1983 does not abrogate state sovereign immunity. *Quern v. Jordan*, 440 U.S. 332, 343 (1979). Nor does the plaintiff allege facts suggesting that the state has waived immunity in this case. Thus, as all defendants are state officials, the plaintiff cannot obtain damages from any defendant in his or her official capacity. All claims for damages against the defendants in their official capacities are dismissed pursuant to 28 U.S.C. § 1915A(b)(2).

### F.     Injunctive Relief

The plaintiff states that Warden Maldonado was not the warden when the incident occurred but notes that he has named her because, as the current warden, only she can provide him injunctive relief. He seeks an order that no non-supervisory official or employee may carry or use a chemical agent.

Injunctive relief in cases filed by prisoners regarding prison conditions must be narrowly tailored. "The court shall not approve any prospective relief unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right." 18 U.S.C. § 3626(a)(1).

The plaintiff's complaint, in essence, is that a chemical agent was used against him even though he has a medical condition, asthma, precluding such use. He contends that Officer Blekis did not follow procedures and contact the medical unit to determine whether use of a chemical agent was contraindicated in his medical records before deploying the agent. As the crux of the claim is that Officer Blekis did not follow proper procedures and not merely that Officer Blekis is a non-supervisory officer, an order that no non-supervisory officer or staff member may carry or deploy a chemical agent is overbroad and must be denied.

As the request for injunctive relief is the only claim against Warden Maldonado, she is dismissed from this action.

### G.    State Law Provisions and Miscellaneous References

The plaintiff asserts claims against defendants Blekis and Marcellin for violation of several state law provisions, Connecticut General Statutes §§ 53a-180a, 53a-180, 53a-300, 53a-302, 53a-320, 53-11, and 53-19.[1] All of these provisions are state criminal statutes. The Court has reviewed the text of each statute and finds no language creating a private right of action under any of them. As the plaintiff does not provide any authority indicating that any of the statutes creates a private right of action, all claims for violation of these state statutes are

---

[1] Connecticut General Statutes §§ 53-11 and 53-19 have been repealed.

dismissed with prejudice. *See, e.g., Sentementes v. General Elec. Co.*, No. 3:14-CV-00131-VLB, 2014 WL 2881441, at *10 (D. Conn. June 25, 2014) ("Although there are Connecticut statutes that make it a crime to falsely report a crime or misuse the 911 system, *see, e.g.*, Conn. Gen. Stat. § 53a-180 - 53a-180d, the Court sees no private right of action created in the text of these statutes, and the Plaintiffs have not demonstrated that the statute created a private right of action, thus the claim is dismissed without leave to replead.").

The plaintiff also states that he asserts claims for violation of 1288.60 pepper spray, 1000.35 (agency must obey its rules), 0912.25 (civil conspiracy), and 1708.75. He does not identify these numbers and the Court cannot discern their origin. If, as the Court suspects, the numbers are categories in some research source, they are not constitutional rights or causes of action and their mention does not state a cognizable claim against defendant Blekis or Marcellin. Thus, any purported claims are dismissed with prejudice.

## IV.    CONCLUSION

All claims against defendants Marcellin, Washington, and Maldonado, all claims for damages against the defendants in their official capacities, and all claims for violation of state law and the listed research categories are **DISMISSED** with prejudice pursuant to 28 U.S.C. § 1915A(b).

The case will proceed only on the claim for use of excessive force against Officer Blekis in his individual capacity.

The Court enters the following additional orders.

(1)     **The Clerk shall** contact the Department of Correction Office of Legal Affairs to ascertain a current service address for defendant Blekis, mail a waiver of service of process request packet containing the Complaint and this Order to the defendant at the address provided

within **twenty-one (21) days** of this Order, and report to the court on the status of the waiver request on the thirty-fifth day after mailing. If the defendant fails to return the waiver request, the Clerk shall arrange for in-person service by the U.S. Marshals Service on the defendant in his individual capacity and the defendant shall be required to pay the cost of such service.

(2)     **The Clerk shall** send the plaintiff a copy of this Order.

(3)     **The Clerk shall** send a courtesy copy of the Complaint and this Order to the Connecticut Attorney General and the Department of Correction Office of Legal Affairs.

(4)     The defendant shall file his response to the complaint, either an answer or motion to dismiss, within **sixty (60) days** from the date the waiver forms are sent. If he chooses to file an answer, he shall admit or deny the allegations and respond to the cognizable claim recited above. He also may include all additional defenses permitted by the Federal Rules.

(5)     Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be completed within **seven months (210 days)** from the date of this order. Discovery requests need not be filed with the court.

(6)     All motions for summary judgment shall be filed within **eight months (240 days)** from the date of this order.

(7)     Pursuant to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within twenty-one (21) days of the date the motion was filed. If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(8)     If the plaintiff changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that he MUST notify the court. Failure to do so can result in the dismissal of the case. The plaintiff must give notice of a new address even if he is incarcerated. The plaintiff should write PLEASE NOTE MY NEW ADDRESS on the notice. It

is not enough to just put the new address on a letter without indicating that it is a new address. If the plaintiff has more than one pending case, he should indicate all the case numbers in the notification of change of address. The plaintiff should also notify the defendants or the attorney for the defendants of his new address.

(9)     The plaintiff shall utilize the Prisoner Efiling Program when filing documents with the court. The plaintiff is advised that the Program may be used only to file documents with the court. As local court rules provide that discovery requests are not filed with the court, discovery requests must be served on defendants' counsel by regular mail.

(10)    The Clerk shall immediately enter the District of Connecticut Standing Order Re: Initial Discovery Disclosures concerning cases initiated by self-represented inmates and shall send a copy to the plaintiff.

**SO ORDERED.**

Hartford, Connecticut
January 22, 2024

/s/Vernon D. Oliver
VERNON D. OLIVER
United States District Judge